Lonnie Snodgrass v. The State.

No. 1514. Decided February 14, 1912.

Rehearing denied October 16, 1912.

**1.—Theft of Horse—Charge of Court—Constitutional Law.**

Where, upon trial of theft of horses, the defendant requested the court to charge the law with regard to suspending the sentence as enacted by the Thirty-Second Legislature, which the court refused, there was no reversible error, as this Act is unconstitutional.

**2.—Same—Constitutional Law.**

It is a proposition that ought not to be questioned that wherever the Constitution confers power or upon what department of the government that power is conferred, it must be exercised in the manner pointed out to the exclusion of all other means of manner of exercising it.

**3.—Same—Constitutional Law—Pardoning Power.**

The Act of the Thirty-Second Legislature, chapter 44, p. 67, undertakes to confer the pardoning power under the guise of a suspension Act upon the District Court or the judges thereof, and is, therefore, violative of the Constitution, which confers the pardoning power upon the Governor alone.

**4.—Same—Suspension of Sentence—Conditional and Unconditional Pardon.**

The Act of the Thirty-Second Legislature, supra, clothes the district judge, first, with the power to grant a conditional pardon upon conditions mentioned, and second, to declare a breach of the conditions and annul the suspension, and third, to make that pardon final and unconditional upon a compliance by the convicted person with the conditions, or double the length of time of punishment assessed by the conviction, and thus clothes the judge with the pardoning power, which can only be exercised by the Governor under the Constitution.

**5.—Same—Indefinite Suspension of Sentence—Conditional Pardon.**

It is well settled by the authorities that an indefinite suspension of

sentence under conditions amounts to and is a conditional pardon; this can only be done by the Governor under the Constitution and not by the courts.

### 6.—Same—Restoring Convict to Rights.

The operation of the other phase of said Act, that is the authority to set aside the conviction and restore the convict to all his rights is another one of the highest prerogatives of the Governor exercising the pardoning power, and is alone conferred upon him, who may grant conditional or unconditional pardons.

### 7.—Same—Constitutional Law.

Under said ·Act, the sentence is suspended at the discretion of the judge, and this discretion is made arbitrarily, final, and from it no appeal can be prosecuted, and this renders said Act invalid and unconstitutional.

### 8.—Same—Right of Appeal.

Said Act takes from the accused the right of appeal to have any ruling of the trial court reviewed and contravenes section 28, article 1, of the Constitution, which provides that no law shall be suspended except by the Legislature; and the Legislature has no power to authorize a district judge to suspend the law or the right of appeal—all of which renders said Act unconstitutional.

Appeal from the District Court of Erath.  Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of theft of horse; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*B. E. Cook,* for appellant.—For brief and authorities see companion case, number 1513.

*C. E. Lane,* Assistant Attorney-General, and *C. F. Greenwood,* for the State.—For brief and authorities cited see companion case, number 1513.

DAVIDSON, PRESIDING JUDGE.—This is a companion case to that of Lonnie Snodgrass v. State, No. 1513 this day affirmed in an opinion by Judge Harper.  The ·records are practically the same, the horses being stolen from the different owners on the same night, and State's case is that appellant was found in possession of them some distance from where they were taken trying to sell or dispose of them.

1. The defendant requested the court to charge the law with regard to suspending the sentence as enacted by the Thirty-Second Legislature, to be found on page 67 of the Acts of that body.  This Act is quoted in full in the opinion by Judge Harper.  It is, therefore, deemed unnecessary to here repeat it.  Judge Harper holds the Act unconstitutional in that it is an infringement of the constitutional prerogative of the Governor to exercise the pardoning power.  That clause of the Constitution is in the following language: "In all criminal cases, except treason and impeachment, he (the Governor) shall have power, after conviction, to grant reprieves, commutations

of punishment and pardons; and under such rule as the Legislature may prescribe he shall have power to remit fines and forfeitures. With the advice and consent of the Senate he may grant pardons in cases of treason, and to this end he may respite sentence therefor, until the close of the succeeding Legislature."

It is a proposition that ought not to be questioned, that wherever the Constitution confers power or upon what department of the government that power is conferred, it must be exercised in the manner pointed out to the exclusion of all other means or manner of exercising it. On this phase of the question I do not purpose to enter a discussion. The Act in question undertakes to confer the pardoning power under the guise of a suspension Act upon the District Courts of this State, or the judges thereof. If that is the effect to be given the Act, then unquestionably it transgresses and is in violation of the constitutional provision conferring the pardoning power upon the Governor. It will be observed by the reading of the Act that the Legislature authorized the district judge upon the written request of the defendant under the circumstances mentioned in the Act, to submit to the jury the issue as to whether or not the defendant had ever before been charged with or convicted of felony, and if the jury should find that he had not been, and his character had heretofore been good, it is then discretionary with the court as to whether or not he would suspend the sentence in case the jury convicted. This discretion is made nonreviewable. This discretion being exercised is, therefore, to be absolutely final. If the sentence is suspended, it shall be for an indefinite time predicated upon the "good behavior" of the convicted person, and by good behavior is meant that the defendant shall not be convicted of any felony during the time of such suspension or convicted of any misdemeanor which involves moral turpitude, and this moral turpitude is such as may be considered moral turpitude by the judge who granted the suspension. It will be seen then that the suspension of this sentence is dependent upon a condition or conditions subsequent. This condition is based, first, upon the fact that the defendant must not be charged with or convicted of a felony, and, second, that he must be guilty of such moral turpitude as the judge may think constitutes moral turpitude when applied to misdemeanor cases. Should the judge conclude afterwards the defendant has violated either of these conditions, he may issue his process and have him brought into court, the suspension set aside and the judgment made final, and the convict required to undergo the penalty of the original judgment. Under all the authorities this suspension of the sentence is, in its operation, first, a conditional pardon dependent upon the conditions subsequent mentioned, and, second, upon a forfeiture or breach of these conditions the conditional pardon may be set aside, and, third, if the conditions are complied with for double the length of time for which the conviction occurred, then the judge

may bring the party into court and set aside and annul the former judgment, and of course, the conditions which follow it, and discharge him from all responsibility. This, in effect, is an unconditional pardon and leaves the accused in the attitude of being as if he had never been convicted. So then, to sum up this Act of the Legislature, it clothes the district judge, first, with the power to grant conditional pardon upon conditions mentioned, and, second, to declare a breach of the conditions and annul the suspension, and, third, to make that pardon final and unconditional upon a compliance by the convicted person with the conditions for double the length of time of punishment assessed by the conviction. From any view of this Act, there is to be seen nothing but an attempted conferring of the pardoning power upon the district judge, and, if legal, it clothes him with all the authority in regard to conditional and unconditional pardons in these respects that is exercised by the Governor under the terms of the Constitution. It has been held and is well settled by the authorities that an indefinite suspension of sentence on conditions amounts to and is a conditional pardon. State v. Hunter, 124 Iowa, 569; 104 Am. St. Rep., 361. If this is a correct legal proposition, then the statute in question confers upon the district judge power to grant a conditional pardon on the conditions stipulated in the Act. The Governor, under the Constitution, may annex to a pardon such conditions precedent or subsequent as are not forbidden by law, and it is binding upon the grantee. This Act confers that power upon the judge. The question of conditional pardon has been the subject of a great many decisions in the United States, and of some in the State of Texas. Carr v. State, 19 Texas Crim. App., 635. Mr. Branch in his admirable work on Criminal Law, collates the Texas cases. Sections 856 and 857. Many of the authorities are collated in the Carr case. That case follows as a rule of decision practically all the authorities. This is laid down as being a rule in 29 Cyc., 1570, where it is said, "the power to grant a pardon includes the power to grant a conditional pardon, the condition to be precedent or subsequent." In Note 57, under the above quotation, many cases are collated, both State and Federal, supporting the proposition; and it is further stated that the condition may be of any nature so long as it is not illegal, immoral or impossible of performance. Note 58 collates authorities from many of the State courts as well as the Federal courts. Among other conditions held to be valid by the cases is one that the party accepting the conditional pardon shall not be convicted of any criminal offense in the State, making it subject to revocation on breach of the conditions. There are many cases which support this proposition. These propositions are so thoroughly settled that we simply mention them in passing, and this only to call attention to the fact that the statute in question confers upon the District Court the same auhority that is conferred upon the Governor with reference to conditional par-

dons.  The fact that the Legislature called it a suspension does not change the effect of the enactment, for, as before stated, an indefinite sentence dependent upon a condition or conditions if valid is nothing but a conditional pardon.

The operation of the other phase of the statue, that is, the authority to set aside the conviction and restore the convict to all his rights, is another one of the highest prerogatives of the Governor exercising the pardoning power.  This is an essential element in the pardoning power, and is confined to and in the pardoning power alone, wherever that may be lodged, for its exercise.  Our Constitution has fixed this definitely and exclusively in the Governor.  The only discretion confided to the Legislature in respect to this clause of the Constitution is with reference to the remission of fines and forfeitures.  The power is absolute in the Governor so far as the pardoning power itself is concerned.  This question came before the court for investigation in Martin v. State, 21 Texas Crim. App., 1. One of the questions in that case under discussion was whether the Governor had no authority to grant a full and unconditional pardon because he disagreed with the Court of Appeals as to the effect of the conditional pardon in restoring or not restoring the citizenship of the convict.  It is thus stated in the opinion: "It was further objected to the pardon that it was granted to avoid a decision of this court, wherein we held that a former pardon granted said Hester did not restore his competency as a witness, because it was a conditional and not a full pardon.  With the reasons which actuated the executive to grant the pardon the courts have no concern.  The Constitution clothes him with the power to grant pardons, and this power is beyond the control, or even the legitimate criticism, of the judiciary.  Whatever may have been the reasons for granting the pardon, the courts can not decline to give it effect, if it be valid upon its face.  (1 Bish. Cr. Law, secs. 921-926.)"

It was further held in the same opinion, that a previously granted conditional pardon which had been accepted by the convict can not affect the validity or effect of the full pardon subsequently granted to and accepted by that convict.  "We know of no such limitation to the pardoning power.  The pardon in question in this case is a full pardon, and had the effect to restore Hester to his competency to testify as a witness."  The former pardon, which was the conditional one, was held to be imperfect in this respect, and the court said they could see no good reason why the executive may not grant and order a full pardon as if no previous pardon had been granted. We cite these authorities and make these statements to emphasize the fact that the operation of the suspension statute under consideration is but to authorize the District Courts to grant, first, a conditional pardon, and, second, upon compliance with the conditions of that pardon to make it full and complete.  This is the pardoning power conferred upon the Governor by the Constitution, and the Act

suspending sentence, under consideration, clothes the District Courts with exactly the identical power with which the Constitution clothes the Governor. It has been said that "things which are equal to the same thing are equal to each other."

There are other questions in the case suggested that, in our judgment, are equally fatal to the validity and constitutionality of this law. If the sentence is suspended at the discretion of the judge, this discretion is made arbitrarily final and from it no appeal can be prosecuted, and no court can review this discretionary action. It would hardly be contended that this character of legislation is valid. Under it two parties charged with the same act, with the same facts before the jury and court, one could be sent to ·the penitentiary, and the other turned loose upon his recognizance. It was never intended by the law that such arbitrary discretion as this should be lodged in the courts, but if it could be done, it only emphasizes the fact of the absolute certainty that it is only by exercising the pardoning power, and this, with all the authority with which the Constitution clothes the Governor.

Again, it takes away from the accused the right of appeal to have any ruling of the trial court reviewed. The Legislature has no power to authorize the district judge to suspend the law or right of appeal. In fact, section 28, article 1, provides that no law shall be suspended except by the Legislature itself. It is not unknown in the history of this State why this section of article 1 was modified in 1873 from what it had theretofore provided. I do not purpose to go into the history of that matter, but simply say it grew out of what was thought to be the tyrannical rule and action under the Constitution of 1869 and under the then existing administration. Prior to 1873 this section read: "No law should be suspended except by the Legislature or its authority." Immediately upon the installation of Governor Coke an amendment to the Constitution was submitted in which this section was amended so as to omit from its reading the expression "or its authority." Since the adoption of that amendment the Constitution has limited the authority to suspend laws exclusively in the legislative department. The Act of the Thirty-Second Legislature not only authorizes the district judge to exercise pardoning power, but it grants him authority to set aside the right of appeal, and makes that action nonreviewable by the Appellate Courts, or any other authority in the State. Nor does any further terms of the Act make provision for the right of appeal in case the suspension is set aside and the judgment made final. It will readily be seen under the terms of this Act when the judgment is suspended and the discretion of the court is made nonreviewable and final, that it eliminates from the defendant the right to have a statement of facts, bills of exception and motion for new trial, and matters of that sort filed preparatory to

exercising his right of appeal. Of course, the right of appeal being abolished, the other matters would become unnecessary.

There are other provisions of the Act we think are equally fatal to its validity. I have mentioned some of these in addition to what Judge Harper has discussed in his opinion.

The judgment is affirmed.

*Affirmed.*

PRENDERGAST, Judge.—I am inclined to believe the Act of the Thirty-Second Legislature cited in the opinion is constitutional. At least, I have such doubt that I am unwilling to agree to the opinion declaring it unconstitutional.

[Rehearing denied October 16, 1912. Reporter.]